BECKWITH MACHINERY CO. *v.* MATTHEWS ET AL.,
RECEIVERS

[No. 109, October Term, 1947]

*Decided March 19, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Walter C. Capper*, with who was *William S. Jenkins* on the brief, for the appellant.

*William C. Walsh*, with who was *Walter W. Dawson* on the brief, for the appellees.

GRASON, J., delivered the opinion of the Court.

The Burnwell Coal Company, whose office is located at Grantsville, Garrett County, Maryland, was insolvent and receivers were appointed for it by the Circuit Court for Garrett County, in Equity. Prior thereto it entered into what is called a lease, of certain machinery, with the Beckwith Machinery Company, a corporation. This lease is in writing and was signed by the parties on July 23, 1946. The receivers took possession of this machinery and refused to return it to the corporation. The corporation filed a petition in that proceeding, praying the chancellor to decree that the receivers return the machinery covered by the contract to it. The receivers filed an answer to the petition, testimony was taken, solicitors were heard, and the chancellor filed his opinion, followed by a decree refusing the relief prayed, and dismissing the petition. The corporation appealed.

The so-called lease is captioned: "Agreement for Rental of Machinery". The term of rental ran for eight months from July 24, 1946. The total rent to be paid was $4,632. $579 was paid by the company to the corporation at the time the agreement was signed, and it was stipulated that $579 was to be paid on the 24th day of each calendar month until the said amount of $4,632 was paid. The company was engaged in strip-mining and used the machinery in its operations. It was delivered to the company at the corporation's place of business at Pittsburgh, Pennsylvania, and taken by truck to the company's place of business at Grantsville, Garrett County, Maryland. The agreement provides: "That for and in considera-

tion of the payments, covenants and agreements herein-after set forth, and subject to the Terms and conditions printed on the reverse side and made part hereof, the Owner hereby leases and rents to the Lessee and Lessee agrees to rent and hire from the Owner * * * the following described machinery: * * * for and during the term of eight months * * * commencing on the 24th day of July, 1946, for the total rental of $4,632.00, payable * * * $579.00 on the signing of this agreement, and $579.00 on or before the 24th day of each succeeding calendar month until the whole amount of said rental is paid. Lessee may, at his or its election, extend said term by retaining possession of the above described machinery after the expiration of the period aforesaid; and in such event Lessee agrees to pay to Owner, in the manner aforesaid, additional rental at the rate of $579.00 per month."

It is further provided that lessee shall preserve said machinery in good operating condition and repair, replacing at its expense any parts that may become broken or worn out, and, at the expiration of the agreement, to return the machinery to the corporation in as good condition as when received, wear and tear excepted. Lessee agreed not to part with possession of the machinery nor to remove same from the State of Maryland, nor assign any right thereunder without the written consent of the owner. It was further agreed: "that at any time on or before the 24th day of March, 1947, Lessee, if Lessee be not then in default under any of the provisions hereof, shall have the right and option to purchase the aforesaid machinery for the total sum of Eight thousand two hundred forty-four dollars and sixty-four cents ($8,244.64) ; and in the event of Lessee's election so to purchase said machinery, there shall be applied upon the purchase price all installments of rental theretofore paid to Owner by Lessee hereunder. Six (6) per cent interest on the unpaid balance from the time of rental to time of the purchase shall be added to the purchase price."

It is further agreed, among other things, that: "Lessee shall at Lessee's own expense, but in the name and for the benefit of the Owner, insure said Machinery against loss that may occur or be caused by fire, flood, accident, explosion, theft or otherwise, and liability of any and every kind."

It is further provided that title in the machinery shall at all times "be and remain with the Owner unless transferred to the Lessee by separate written instrument."

It is further provided that the owner may repossess the machinery in case of default by the lessee in any of the terms, agreements, and covenants of the lease, and it may repossess the same if lessee becomes a bankrupt.

It is stated in the appellant's brief: "There is certainly no case in Maryland tending to hold that a rental agreement with an option to purchase, or a bailment lease with an option to purchase, can *ipso facto* be converted into a conditional sales contract and rendered void under the Maryland statute."

Appellant contends that this so-called lease is "a bailment lease with an option to purchase", and the corporation is not required to record the same under our statute in order to protect itself from subsequent creditors of the company.

The appellees contend that the lease in question is a conditional sales contract, and except as between the parties thereto, or one with notice thereof, is void as to those extending credit to the company after it received the machinery in question, under the provision of Section 71 of Article 21, Code 1939, which is, in part, as follows: "Every note, sale or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed and possession is to be delivered to the vendee, shall, in respect to such reservation and condition, be void as to third parties without notice

until such note, sale or contract be in writing, signed by the vendee, and be recorded."

The agreement here concerned was not recorded in Garrett County, Maryland, and, as far as the evidence shows, it was not recorded anywhere. There is no question that the company was given credit by various merchants after the machinery was received and used by the company in its business located in Garrett County, Maryland. The question in this case is whether the agreement in question is a conditional sales contract. If it is, then the chancellor's ruling was right. If it is not such a contract, the ruling was wrong.

A conditional sales contract, wherein title to the article sold is reserved by the vendor, and possession thereof given the vendee, must be recorded, if the vendor wishes to protect himself from subsequent creditors of the vendee. The section of the Code referred to so requires, and this court has so decided. *Meyer Motor Car Co., Inc., v. First Nat. Bank,* 154 Md. 77, 140 A. 34; *Stieff, Inc., v. Wilson,* 151 Md. 597, 135 A. 407; *Gunby v. Mack International Motor Truck Corporation,* 156 Md. 19, 142 A. 596.

The question whether a given instrument is a bailment lease or a conditional sales contract has given the court much difficulty. The matter is treated at length in 43 *A. L. R.* 1257; 92 *A. L. R.* 323; 17 *A. L. R.* 1441; 47 *Am. Jur.,* page 26, sec. 837.

*Williston on Sales,* second edition, section 336, page 780, in part, says: "Sellers desirous of making conditional sales of their goods, but who do not wish openly to make a bargain in that form, for one reason or another, have frequently resorted to the device of making contracts in the form of leases either with options to the buyer to purchase for a small consideration at the end of the term, provided the so-called rent has been duly paid, or with stipulations that if the rent throughout the term is paid, title shall thereupon vest in the lessee. It is obvious that such transactions are leases only in name. The so-called rent must necessarily be

regarded as payment of the price in instalments since the due payment of the agreed amount results, by the terms of the bargain, in the transfer of title to the lessee. This has been clearly recognized and many of the statutes relating to conditional sales in express terms include leases within their scope. Apart from statutes courts have disregarded the form of the transaction and have held that where payment of so-called rent nearly or quite pays the price of the goods the bargain is conditional sale and subject to the rules governing that kind of transaction."

*In re Rainey*, D. C., 31 F. 2d 197, 199, is a case similar to the one at bar. There the court said:

"In order to determine the true character of the agreement, it is necessary to look through form to substance. In the present case the rental of the machinery for three months, the full term of the lease, amounted to 60 per cent of its entire value. A charge so disproportionate to the term of user in relation to the value of the articles, all of which were secondhand, in and of itself certainly suggests a sale."

"The distinction between an ordinary lease and a conditional sale is obvious. A lease contemplates only the use of the property for a limited time and the return of it to the lessor at the expiration of that time; whereas, a conditional sale contemplates the ultimate ownership of the property by the buyer, together with the use of it in the meantime. * * * The court considers the Pennsylvania decisions to which it has been referred as an anomaly in the law. In a few states only, notably Mississippi and Pennsylvania, a different doctrine, contrary to the great weight of authority, is adhered to, and contrary to what the court believes to be the correct rule when applied in the light of the Maryland statute and decisions construing the same. At least the court has been referred to no Maryland decision, nor has it found any, which would lead it to believe that the Maryland doctrine is or should be different from that here announced. See *Corbett v. Riddle*, 4 Cir., 209 F. 811.

See, also, *Hervey, et al. v. Rhode Island Locomotive Works,* 93 U. S. 664, 23 L. Ed. 1003; *Singer Sewing Machine Co. v. Cooper,* D. C., 263 F. 994; *Williston on Sales,* § 336, and cases cited. "It follows that the agreement is void as against the trustee in bankruptcy, because unrecorded as required by section 55 of article 21 of the Maryland Code. *In re Rosen,* D. C., 23 F. 2d 687; *In re Shipley,* D. C., 24 F. 2d 991 (decisions of this court), and cases therein cited. Accordingly, the petitioner is relegated to the position of a general creditor for any unpaid balance on the notes given under the agreement."

*In re Munger Fish Co.,* 8 Cir., 9 F. 2d 54, 56, the court said:

"The final payment, which is nominally the purchase price, is so small in comparison with the entire purchase price as to leave no real choice to the 'lessee.' The obvious purpose was to dispose of the machine under such conditions that when the 'lessee' had paid the 'rental' he could not afford to fail the relatively small final payment to obtain it. This would have been the obvious and natural, if not the inevitable, result. Evidently it was what the parties desired and intended to accomplish.

"Another significant provision is that: 'The lessee agrees that until the full payment of the said rent as aforesaid, the lessee will not injure, sell, dispose of, mortgage, relet, or in any wise incumber the said adding machines or remove same from Denver.'

"To 'sell, dispose of, mortgage, * * * or in any wise incumber' are acts of ownership not of tenancy. They are inconsistent with and opposed to a leasing of this character of property. The statement concerning them would, in a legal sense, be pure surplusage except for the significant limitation of this inhibition contained in the words 'until the full payment of the said rent'— not until the full payment of the purchase price. The natural and proper inference and construction of this language is that when the full rental had been paid, the 'lessee' could incumber or sell the machine."

"The whole instrument shows a careful, studied attempt to give it the form and appearance of a lease; but the obvious purpose and the natural effect thereof is to consummate a conditional sale."

In *Phelan v. Stockyards Bank,* 134 Okl. 13, 276, P. 175, 178, the court held regarding a written contract, in the form of a lease, containing a clause granting the privilege to purchase, if it appears from the whole contract and the circumstances surrounding its execution, that the payments designated therein as rent are in fact payments on the purchase price designated in the contract, and possession of the property is delivered to the vendee at the time of the execution, that such a contract, construed together with all the facts and circumstances surrounding its execution, is not a lease, but a conditional sale, and unless recorded, is void against subsequent purchasers or incumbrancers in good faith and for value. The court in that case quoted from *Hervey v. Rhode Island Locomotive Works,* 93 U. S. 664, 23 L. Ed. 1003, as follows: " 'Courts will always look to the purpose to be attained by the contract rather than the name given to it by the parties in order to determine its real character. If that purpose be to give the vendor a lien on the property until payment in full of the purchase money, it is liable to be defeated by creditors of the purchaser who is in possession of it.' " See *Arter v. Jacobs,* 226 App. Div. 343, 234 N. Y. S. 357, at page 361; *Loeb Piano Co. v. Kessler,* La. App., 140 So. 398.

The rule in Pennsylvania, which we are asked to adopt in this state, is as follows: "In Pennsylvania the rule obtains that if a party receives the possession of goods under an agreement that he is to retain them for a definite period of time, and if, at or before the expiration of that period, he pays for them, he is to become the owner,—otherwise to pay for the use of them,—this constitutes a bailment, and the title to the property, even as against creditors, remains in the bailor." 17 *A. L. R.* 1441.

This rule applies in only a few states and is against the weight of authority in this country.

We have carefully considered the cases in the appellant's brief. Most of them relate to the Pennsylvania law, and the facts in the Maryland cases cited are so different from the facts of the case at bar that they do not help us in deciding this case.

John H. Gunst is secretary and assistant treasurer of the appellant corporation. He testified that the total purchase price of the machinery was $8,244.64; if the monthly payments had been made, at the end of eight months the company would have paid $4,632, or approximately 56% of the purchase price, leaving a balance of $3,612.64. If appellee had made these payments it was contemplated that the appellant would sell the machinery under a conditional sales contract for $3,-612.64, plus interest on that sum from the date of the contract in question to the time that the conditional sales contract was entered into. It appears that the company wanted to buy this machinery under a conditional sales contract, but was prevented from doing so because of Federal regulation which required a down payment of at least 20% of the value of the machinery. This the company could not make. Mr. Gunst testified: "And the only reason it was not so sold under a conditional sales contract originally to the Burnwell Coal Company was that they wouldn't make the down payment." "Q. Would your company have at the end of that time (eight months) taken the machine back and refused to give them any credit for the payments? A. We would have given you the option to purchase it before the 24th of March, 1947, but after that day you wouldn't have the option to purchase it. Q. Then you mean to tell the court by the mere failure of the Burnwell Company to tell you that they were going to exercise the option to purchase, but kept on making the payments, you wouldn't have sold the machine to them or given them any credit for the payments? A. No, I can't be compelled to. Q. But you would have as a practical—A. As a practice?

Q. As a matter of fact, you would have given them the machine if they would have paid you the full purchase price? A. No, unless they exercise the option to purchase."

In its account showing the balance due on rental, it appears that it allowed the company, on parts returned, $496.37.

We find the following facts. The parties originally wanted to enter into a conditional sales contract for the machinery. This could not be done because of the Federal regulation requiring a down payment of at least 20% of the value of the machinery. They, therefore, resorted to a lease, with an option to purchase. The monthly rent charged, of $579, is greatly disproportionate to the value of the machinery, for in the eight months 56% of the value of this machinery was charged as so-called rent. Testimony shows the life of the greater part of this machinery was eight years. The fact that the lessor allowed the value of returned parts of this machinery to be credited on the rent is inconsistent with a lease. The fact that 56% of the value of the machinery was to be paid as rent before the option could be exercised, was so great as to virtually compel the lessee to buy. No solvent operators would take such a loss, and the only alternative was to buy. From these facts we are of opinion that the parties intended this "Agreement of Rental of Machinery" to be a sale.

The chancellor was correct in refusing to admit in evidence a contract of sale between these parties entered into six months after the date of the instrument here considered.

In determining whether or not a given instrument is a conditional sales contract, we must find what the intention of the parties was at the time it was entered into. The situation of the parties, their purpose, the thing they sought to accomplish, and the method employed, are all important. Once the intention of the parties becomes clear, it is immaterial what the instrument is called, nor how skillfully the real intention of

the parties is disguised. What the parties tried to disguise was evasion of the Federal regulation in regard to a down payment. We cannot give much credit to the testimony that if the full purchase price of this machinery had been paid in monthly installments of $579 by the company to the corporation, the corporation would not have transferred full title to machinery to the company. In transacting business in our modern day, some people desire not to know what the law is, but how to evade the law. However clever the form of such evasion may take, when discovered, it is denounced by the courts. We cannot apply the Pennsylvania rule. To do so would prevent what the Legislature of this State intended to accomplish when it enacted into law Section 71 of Article 21 of the Code of 1939. Evasion of the Maryland law is not justified, but aggravated by evasion of Federal law also.

For the reasons given, we think the learned chancellor ruled correctly, and his decree will be affirmed.

*Decree affirmed, with costs.*