UNITED RENTAL EQUIPMENT COMPANY, INC. *v.*
POTTS & CALLAHAN CONTRACTING
CO., INC., ET AL.

[No. 326, September Term, 1962.]

*Decided June 7, 1963.*

554

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*John T. Brooks,* with whom were *Allen, Burch & Allen* and *Francis B. Burch* on the brief, for appellant.

*Benjamin H. Murray,* with whom was *J. Paul Bright, Jr.,* on the brief, for Potts & Callahan Contracting Co., Inc., part of appellees.

*Eugene P. Smith,* with whom was *M. William Adelson* on the brief, for Mark M. Mayers & Co., Inc., part of appellees.

Submitted on the brief by *Jacob Hornstein* for Standard Finance Co., other appellee.

HAMMOND, J., delivered the opinion of the Court.

The lessee of an air compressing machine suffered judgment and execution to go against him, and the machine was sold by the sheriff. At issue in this appeal is whether the purchaser or the lessor of the machine, claiming it as owner, has title, and the purchaser's right to damages because the lessor in seeking to establish its ownership of the machine by legal action prevented the purchaser from disposing of the machine as its own and subjected it to expense.

The following facts are revealed by the record. On August 19, 1960, United Rental Equipment Co., Inc. (United) transferred possession and the right of use of a Worthington air compressor, with a P & H diesel engine (the compressor), to one Edward Wuensche under a document entitled "Crane Rental Contract," which recited that the compressor and other items of mechanical equipment were leased by United to Wuensche and set forth provisions as to the use, operation

and maintenance of the equipment. It was provided that the rental would be $800 a month for the compressor for a minimum period of one month and that "after expiration of the minimum term * * * the Lessee shall pay * * * the same rental per month * * * until the aforesaid equipment is returned to the Lessor." The agreement provided that Wuensche was to use the compressor in Philadelphia, Pennsylvania, and oral permission was given by United for use outside the metropolitan area of Philadelphia.

In the agreement the lessee agreed to pay all sales and use taxes. The lessor reserved the right to terminate the lease at any time if the equipment was being overloaded, abused or neglected, or if it was in danger because of strikes or other conditions, or for violation by the lessee of any provision of the lease. It was agreed also that eighty-five per cent of the rental of the compressor was to be applied on the specified purchase price thereof of $14,500.

The agreement between United and Wuensche was never recorded or filed in any place of public record.

Wuensche brought the compressor to Baltimore. On October 24, 1960, he gave a judgment note for $24,000 to Mark M. Mayers and Company, Inc., an appellee, and on November 23, 1960, arranged that the compressor be mortgaged to Standard Finance Company, another appellee, for $6,600. On March 30, 1961, Mayers took judgment against Wuensche and issued a writ of fieri facias. Pursuant to the writ, the sheriff of Baltimore seized the compressor and in due course sold it to Potts and Callahan Contracting Company, Inc., another appellee, on April 18, 1961. On June 22, United advised Potts and Callahan that it claimed title to the compressor. This was the first any of the appellees had heard of the United-Wuensche lease agreement.

The compressor brought $5,900 at the sheriff's sale, and the net balance of the purchase price was paid into court. The parties stipulated that if United's claim of title was denied, Potts and Callahan had title to the compressor free and clear and unencumbered by any lien or claim of title of any of the

parties and that the money in court would be subject to further litigation by the various claimants of it.

During the summer of 1961 Potts and Callahan found that the engine of the compressor furnished insufficient power. In November the Worthington Corporation, as a matter of good will, offered to allow $10,000 for the compressor on a trade-in for a new compressor priced at $19,000. Potts and Callahan testified it was forced to decline the offer because of United's claim of title and was required to rent other compressors to fulfill its contracts. It claimed below, and the court granted, reimbursement for these rental expenditures.

About a week after the sheriff's sale, Standard filed a petition seeking to have its mortgage claim paid from the proceeds of sale. Potts and Callahan intervened as a plaintiff and brought in the sheriff, United, Mayers and Standard as defendants. Various pleadings were filed, which it is not necessary to detail. Eventually, Judge Foster decided, in what we treat as a summary judgment on the pleadings and a stipulation of facts (although in form he sustained a demurrer by Mayers to United's answer, as particularized, to Potts and Callahan's petition of intervention), that the title of Potts and Callahan was unassailable and, thereafter, after taking testimony, held that United owed Potts and Callahan $1,470 as reimbursement for the expense it had been put to in order to procure working substitutes for the compressor. United appealed.

The first question presented is whether the unrecorded lease-purchase agreement between United and Wuensche was valid as to subsequent creditors of Wuensche with a judicial lien.

The parties are in agreement that the law of Pennsylvania controls the answer, although suggesting that the answer would be the same under the law of Maryland or the law of New Jersey.

Pennsylvania was the place where the equipment was to be used during the term of the lease. New Jersey, where the contract was executed, has held that the law of the jurisdiction

in which property contracted for is to be delivered and held by the purchaser and not the *lex loci contractus* determines the validity of such a contract. *Knowles Loom Works v. Vacher,* 31 Atl. 306. This Court has held that the validity and effect of foreign contracts dealing with personalty are to be determined according to the law of the place where the contract is executed and delivered. *Scott v. First National Bank,* 224 Md. 462, 465; *Union Trust Co. of New Jersey v. Knabe,* 122 Md. 584.

United argues, and the appellees do not dispute, that prior to 1954 Pennsylvania recognized the bailment lease as valid to sustain the lessor's title against claimants through the lessee, even though the lease was not recorded. See *Brown v. Billington* (Pa.), 29 Atl. 904; *General Motors Acceptance Corporation v. Hartman* (Pa. Super.), 174 Atl. 795. This Pennsylvania rule, an anomaly in the law, was noticed in *Beckwith Machinery Co. v. Matthews,* 190 Md. 182, 188, 190.

In 1954 Pennsylvania adopted the Uniform Commercial Code which, then, required the bailment lease to be recorded under the secured transactions section. Purdon's Penna. Statutes Annotated (Purdon's Statutes), Title 12A, Sec. 9-102. See also that part of the Commentary-Uniform Commercial Code, by Dechert and Brennan, entitled "Article 9—Secured Transactions," to be found at page LX, *et seq.,* Purdon's Statutes, Vol. 12A (the first of the volumes containing Title 12A).

In 1958 the Commissioners on Uniform State Laws revised the Code, and the Pennsylvania legislature amended its statute to incorporate the 1958 revisions and eliminated specific reference to the bailment lease. The amendments took effect on January 1, 1960, and the Code, as revised, thus was applicable to the lease agreement now before us.

Purdon's Statutes, Title 12A (1962 Cum. Supp.), Sec. 9-102 (2), reads:

"This Article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equip-

ment trust, conditional sale, trust receipt, other lien or title retention contract and *lease* or consignment intended as security." (Emphasis added)

Title 12A (1962 Cum. Supp.), Sec. 1-201 (37) reads thus:

" 'Security Interest' means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer * * * is limited in effect to a reservation of a 'security interest' * * *. Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

If the agreement in this case is, under Pennsylvania law, a security interest created by contract, as we think it is, it must have been recorded to protect the lessor from a lien creditor of the lessee. Purdon's Statutes, Title 12A (1962 Cum. Supp.), Sec. 9-301.

We think the agreement was a security interest created by contract primarily because the applicable Pennsylvania law says in Sec. 1-201 (37) of Title 12A that a lease is intended for security if "upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or a nominal consideration."

United argues that the lease was only for a term of one month, that neither lessor nor lessee could extend it without the consent of the other at the time and that either could arbitrarily terminate the lease at any time after the expiration of the first month. On the premise the lease was but for one-

month, it is argued that Wuensche had neither the right nor the option to become the purchaser of the compressor at the expiration of the some twenty-one months it would take for the application of eighty-five per cent of the $800 monthly rental to the purchase price to aggregate $14,500.

We do not so read the agreement. We think the parties contemplated the purchase of the compressor by Wuensche if he continued to pay the specified monthly rental and otherwise complied with the lease. The lease says:

> "After expiration of the minimum term herein set forth, the Lessee shall pay to the Lessor the same rental per month as hereinabove provided * * *. Said rental shall start from the date of original shipment to the above designated site, and shall continue until the aforesaid equipment is returned to the Lessor."

The only option given the lessor to terminate the lease is for enumerated causes. This is consistent with an extended period of rental payments to be determined solely by the lessee.

That the agreement would be regarded as a security instrument (conditional contract of sale), required to be recorded under Code (1957), Art. 21, Sec. 66, if Maryland law controlled, is indicated by *Beckwith Machinery Co. v. Matthews, supra,* and *Alban Tractor Co. v. State Tax Commission,* 219 Md. 593. The same result would appear to follow under New Jersey law: *Albert Lifson & Sons v. Williams,* 162 Atl. 129; *Wood v. Cox,* 113 Atl. 501. Cf. *Rapoport v. Rapoport Express Co.,* 107 Atl. 822.

The trial court was right in holding that Potts and Callahan had good title to the compressor.

The award of damages to Potts and Callahan appears to have been on the theory of unlawful or malicious interference with or prevention of contractual relations as to the compressor between the Worthington Corporation and Potts and Callahan, or upon the theory of malicious prosecution of a civil suit by United against Potts and Callahan.

We can see no facts which would support the award of dam-

ages on either theory. *Restatement, Torts,* Sec. 766, recognized in *Stannard v. McCool,* 198 Md. 609, and *Horn v. Seth,* 201 Md. 589, says that one not privileged to do so who purposely induces or causes a third person not to perform a contract or enter into or continue a business relation with another is liable for the harm caused thereby. Privilege is defined by Sec. 773 of the *Restatement,* which states that:

> "One is privileged purposely to cause another not to perform a contract, or enter into or continue a business relation, with a third person by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction."

United did not initiate the litigation. It was brought into the case by Potts and Callahan who appeared to recognize the title asserted by United as at least colorable. There is nothing to show that United did not act entirely in good faith in asserting and seeking to effectuate in court its claim of title to the compressor, and nothing to indicate coercion, fraud or duress. Indeed there is no showing that United knew of the negotiations between the Worthington Corporation and Potts and Callahan and, under *Stannard v. McCool, supra,* (at pp. 617-618 of 198 Md.), this of itself would defeat the right to damages for interference with contractual relations.

Brief consideration of the rules governing actions for malicious prosecution of a civil suit lead to the conclusion that there is a complete absence here of any showing of malice or lack of probable cause on the part of United, and the absence of these necessary elements alone would defeat Potts and Callahan's right of action. *Clements v. Odorless Excavating Co.,* 67 Md. 461. The Court said in that case, speaking of suits for malicious prosecution of a civil action, "Such suits are not, however, encouraged, because the law recognizes the right of everyone to sue for that which he honestly believes to be his own, and the payment of costs incident to the failure to main-

tain the suit, is ordinarily considered a sufficient penalty." See also *Gore v. Condon,* 87 Md. 368.

> *Order upholding title of Potts and Callahan Contracting Company, Inc., to the compressor affirmed; order awarding damages to that corporation r e v e r s e d. United Rental Equipment Company, Inc., shall pay three-fourths of the costs and Potts and Callahan Contracting Company, Inc., one-fourth.*