Kenneth **WITMER**, d.b.a. Witmer Foods, Appellant,

v.

Thomas S. **KLEPPE**, Administrator of the Small Business Administration, Appellee.

No. 72–1419.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1972.

Decided Dec. 7, 1972.

---

———◆———

Richard E. Rowe, Morgantown, W. Va. (Wilson, Frame & Rowe, Morgantown, W. Va., on brief), for appellant.

Michael Kimmel, Atty., Dept. of Justice (Harlington Wood, Jr., Asst. Atty. Gen., Paul C. Camilletti, U. S. Atty. for the N. D. of W. Va., and Alan S. Rosenthal, Atty., Dept. of Justice, on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and CRAVEN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

■ The critical issue in this appeal is whether Kenneth Witmer's contract with Wit-Mor Foods, Inc. created a security interest within the meaning of Article 9 of the Uniform Commercial Code.[1] The district court, describing the transaction as a conditional sale, held that it did. The court also ruled that Witmer's failure to perfect his security interest subordinated it to the perfected security interest of the Small Business Administration. We affirm.

A brief recital of the facts will put the issue in perspective. Pursuant to the "Contract of Sale and Agreement" set forth in the margin,[2] Witmer deliv-

[1.] W.Va.Code § 46–9–101 et seq. (Michie 1966). State law governs this contract. *Cf.* United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966).

[2.] "This Contract of Sale and Agreement, Made this 13th day of April, 1968, by and between Kenneth D. Witmer doing business as Witmer Foods, of Alleghany County, Maryland, party of the first part, hereinafter called "Seller," and Wit-Mor Foods, a West Virginia Corporation, party of the second part, hereinafter called "Buyer"; Witnesseth:

"Whereas, the Seller is the owner of 1 Annapolis Yacht 24 x 32 x 8 feet freezer, and 1 five horse power Kramer compressor; and

"Whereas, the Seller is desirous of selling and the Buyer is desirous of purchasing the above said freezer and compressor.

"Now, Therefore, the Seller agrees to sell unto the Buyer, and the Buyer agrees to purchase from the Seller the above stated freezer and compressor for the total sum of Six Thousand Dollars ($6,000.00), said $6,000.00 to be paid as follows:

"First: If the purchase price of the freezer and compressor is paid at the time of the signing of this contract, then the purchase price shall be a total of Six Thousand Dollars ($6,000.-00).

"Second: If the purchase price is not paid at the time of the signing of this agreement, then the Buyer shall pay unto the Seller the sum of Thirty Dollars ($30.00) per month rent for the

ered a walk-in food freezer to Wit-Mor Foods. Witmer agreed to sell, and Wit-Mor Foods to buy, the equipment for $6,000. The purchase price could be paid in any of three ways: first, the full amount could be paid immediately; second, Wit-Mor Foods could defer payment for six months and have its monthly "rent" of $30 credited against the purchase price; third, if payment were deferred for more than six months, no credits would be given. The agreement also provided that Witmer was to retain title to the equipment until the purchase price was paid in full.

Witmer did not file a financing statement covering the equipment. Although Wit-Mor Foods paid all monthly charges that came due, it never paid the purchase price.

Several months after delivery of the freezer, Wit-Mor Foods applied for an SBA Loan, listing the freezer among its assets. The SBA lent Wit-Mor Foods $25,000 and filed a financing statement covering all of the company's equipment and fixtures. About two and one-half years later, Wit-Mor Foods defaulted on

the loan, and the SBA sold the assets securing the indebtedness. Before the sale Witmer claimed he owned the freezer, but the SBA insisted its security interest was superior. Witmer then purchased the freezer for $3,800 at the foreclosure sale and brought this action to obtain reimbursement.

Witmer contends that the agreement should be construed as a lease with an option to purchase. He relies on the undisputed proposition that a financing statement need not be filed for a true lease in order to protect leased property in possession of a tenant.[3] Therefore, he concludes, the absence of a financing statement did not afford the SBA a superior right to the equipment.

The government contends that the transaction was a conditional sale. Alternatively, it asserts that even if the transaction were a lease, it was intended as security.[4] Under either of these interpretations, the government claims, Witmer's unperfected security interest was subordinate to the perfected security interest of the SBA.

---

use of the equipment until six months from the date of the signing of this agreement. In the event that the Buyer is ready, willing and able to pay the entire purchase price within this six month period, the said $30.00 per month rent shall be subtracted from and considered part of the purchase price and the Buyer shall pay unto the Seller the sum of $6,000.00, less that amount paid in that six month period as rent.

"Third: In the event that the Buyer is not ready, willing and able to pay the entire purchase price six months from the signing of this instrument, then the $30.00 per month rent during this six month period shall be considered solely as rent and shall in no way be considered part of the purchase price, and that in the event the Buyer continues to keep possession of the freezer and compressor, he shall continue to pay the sum of $30.00 per month rent unto the Seller and this $30.00 per month shall continue to be considered as rent, and in no way considered to be part of the purchase price.

"Fourth: It is hereby specifically understood and agreed between the parties hereto that said freezer and compressor shall remain the property of Kenneth D. Witmer, doing business as Witmer Foods, until the full purchase price is paid and a bill of sale is executed by the Seller to the Buyer evidencing transfer of ownership."

3. *See, e. g.*, In re Wheatland Electric Products Co., 237 F.Supp. 820 (W.D.Pa. 1964); 1 Gilmore, Security Interests in Personal Property 339 (1965).

4. A lease intended as security is subject to the filing requirements of the Code. W.Va.Code §§ 46–1–201(37) and 46–9–102(2) (Michie 1966). *See, e. g.*, United Rental Equipment Co. v. Potts & Callahan Contracting Co., 231 Md. 552, 191 A.2d 570, 573 (1963); In re Royer's Bakery, Inc., 1 UCC Rep.Serv. 342, 343 (E.D.Pa.1963). *See generally* Peden, The Treatment of Equipment Leases as Security Agreements Under the Uniform Commercial Code, 13 Wm. & Mary L. Rev. 110 (1971).

Though Wit-Mor Foods, Inc. is owned by Witmer's brother, the SBA and Witmer concede that the transaction was conducted at arm's length. Neither party presented any evidence about a prior course of dealing. Consequently, the meaning of the agreement must be determined by the language the contracting parties used when read in the light of commercial practices.[5] Applying this standard, we conclude that the parties did not intend a lease. Instead, as the following factors indicate, they intended a sale and delivery of the freezer with retention of title to secure the purchase price:

¶ The paper itself is described as a "Contract of Sale and Agreement," not as a lease.

¶ The parties termed themselves buyer and seller, not lessee and lessor.

¶ They expressed a desire to consummate a sale of the freezer; there is no mention of any desire to lease it.

¶ Witmer agreed to sell, and Wit-Mor Foods to buy, the freezer for a price of $6,000.

¶ Although the contract uses the term "rent" to describe the monthly payments Wit-Mor Foods was to make if it deferred paying the purchase price, there is no evidence from which it can be inferred that, dealing at arm's length, the owner of a $6,000 piece of equipment would rent it for $30 a month—$360 a year; a more reasonable interpretation is that Wit-Mor Foods' monthly payments were in reality interest on the deferred purchase price at the rate of 6 per cent per annum.

¶ The absence of any provision for the expiration or termination of the monthly payments, other than by purchase, buttresses the conclusion that the parties did not intend a lease of the equipment.

¶ Payment of the "rent" did not expressly convert the agreement into a lease, nor did it discharge Wit-Mor Foods' unequivocal obligation to purchase the equipment.

¶ Witmer's retention of title until he received the purchase price in full is a common commercial device typical of conditional sales.

■■ Article 9 of the Uniform Commercial Code, dealing with secured transactions, applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures . . . ."[6] The Code defines security interest as "an interest in personal property or fixtures which secures payment . . . of an obligation."[7] Examination of Witmer's contract indicates that the parties intended that his retention of title would secure Wit-Mor Foods' payment of the purchase price. Article 2 of the Code, governing sales, specifically limits retention of title in delivered goods to a reservation of a security interest.[8] The district court, therefore, properly held the contract created a security interest. This interpretation accords with the policy of including all consensual secured transactions involving personal property within the scope of Article 9.[9] Because Witmer never filed a financing statement to perfect his security interest,[10] the perfected security interest of the SBA had priority.[11]

The judgment of the district court is affirmed.

5. *See* W.Va.Code § 46–1–205, Comment 1 (Michie 1966).

6. W.Va.Code § 46–9–102(1)(a) (Michie 1966).

7. W.Va.Code § 46–1–201(37) (Michie 1966).

8. W.Va.Code § 46–2–401(1) (Michie 1966).

9. W.Va.Code § 46–9–102, Comment (Michie 1966) provides:

"The purpose of this Section is to bring all consensual security interests in personal property and fixtures [with certain exceptions not pertinent to this case], under . . . [Article] 9 . . . . ."
*See generally* 1 Gilmore, Security Interests in Personal Property, ch. 10 (1965).

10. W.Va.Code § 46–9–302(1) (Michie 1966).

11. W.Va.Code §§ 46–9–301(1), –312(5) (Michie 1966).