Denzil WALDRON

v.

BEST T.V. AND STEREO RENTALS, INC.

Civ. No. T–79–1105.

United States District Court,
D. Maryland.

Dec. 28, 1979.

Mark J. Davis, Baltimore, Md., for plaintiff.

Andrew Jay Graham and Edward F. Patz, Baltimore, Md., for defendant.

THOMSEN, Senior District Judge.

Plaintiff's complaint herein seeks recovery from defendant of statutory damages, reasonable attorney's fees and costs, based upon defendant's alleged failure to comply with the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. (the Act), and Regulation Z, 12 C.F.R. Part 226, with respect to a printed-form agreement between plaintiff and defendant entitled "Rental Agreement with Option to Purchase," covering a television set, hereinafter referred to as "the agreement." A copy of the agreement is attached to this opinion as Exhibit A. Jurisdiction exists under 15 U.S.C. § 1640(e).[1]

Plaintiff contends that the agreement is essentially a "credit sale" and that defendant violated the Act and Regulation Z by failing to make the disclosures required by § 121(a) of the Act, 15 U.S.C. § 1631(a), and § 226.6 of Regulation Z.

Defendant contends that the agreement is not a credit sale within the meaning of the Act, and has moved to dismiss the complaint.

Section 103(g) of the Act, 15 U.S.C. § 1602(g), defines a credit sale as:

. . . any sale with respect to which credit is extended or arranged by the seller. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in excess of the aggre-

---

1. Based on pendent jurisdiction, plaintiff also asserts a claim under the Maryland Retail In- stallment Sales Act, Md.Com.Law Code Ann. § 12–601 et seq.

gate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract.

Defendant argues that because plaintiff had a right to terminate the agreement at any time after making the first week's payment of $16.80, there was no contract to pay a "sum substantially equivalent to or in excess of the aggregate value of the property . . . involved." In support of this argument defendant cites several district court cases in which similar contracts were held to be outside the scope of § 1602(g) because the respective "lessees" were not unconditionally obligated to pay a sum at least as much as the value of the property, but had the right to terminate the contract shortly after its execution.[2]

It is true that in the case at bar plaintiff had a right to terminate the agreement under the provisions specified therein; those provisions included the return of the television set in the condition it was when the agreement was made, wear and tear excepted, and the loss of plaintiff's equity in the set. *See* clause entitled "Termination by Renter" in the agreement (Exhibit A). The right of the "Owner" to terminate is set out in the next paragraph of the agreement. Despite the presence of the termination clauses, the agreement was essentially a contract for the credit sale of the TV set to plaintiff for a sum substantially greater than the cash sale value of the set. By its express terms, the contract was to remain in force *unless* (a) the plaintiff exercised her right to terminate the contract and forfeit the equities she had built up in the set by her weekly payments, or (b) plaintiff was guilty of such a breach of the contract as would activate the "Owner's" right to terminate. Such termination clauses do not change the essential nature of the contract as a credit sale. *See generally,* 3A Corbin on Contracts, § 647, at 102–07 (1960

ed.). Moreover, the fact that defendant included in its printed-form agreement a statement that "[t]his is a week-to-week rental agreement with option to purchase" does not change the essential nature of the agreement, which is contained in the several paragraphs stating the actual rights and obligations of the parties.

The legislative history of the Act includes the statement:

> The definition of credit sale is also limited to include leases only if they are, in essence, disguised sale arrangements. The language covering disguised leases is nearly identical to the language used in the Uniform Conditional Sales Act and in many State retail installment sales acts to distinguish between "true" leases and other leases.

1968 U.S.Code Cong. & Admin.News, at p. 1980.

In drawing a distinction between disguised sales and true leases, courts should look to precedents in the commercial law of the state which governs the contract, in this case Maryland law. Maryland has adopted the Uniform Commercial Code (UCC), of which § 1–201(37) (Md.Com.Law Code Ann. § 1–201(37)) provides in pertinent part:

> . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

In *United Rental Equipment Co. v. Potts & Callahan,* 231 Md. 552, 191 A.2d 570 (1963), the court had before it a contract governed by the law of Pennsylvania, which had adopted the UCC. In that case the "lessee" of equipment was given both an option to terminate at will and an option to

---

**2.** Defendant cites in support of this argument: *Tony Clark v. Aquarius T. V. Rental, Inc.,* Civil Action No. CA 4–77–133 (N.D.Tex.1977); *Smith v. ABC Rental Systems of New Orleans, Inc.,* Civil Action No. 77-2733 (E.D.La.1978); *Griggs v. Easy T. V. & Rental, Inc.,* Civil Action No. C 75–2509A (N.D.Ga.1976); *Terrel v. Mr. T's Rental,* Civil Action No. C 75–2053A (N.D. Ga.1976); *Turner v. Curtes Mathes Centers, Inc.,* Bky. No. 3-78 1135(D) (D.Minn.1979).

purchase at the end of the lease period. Arguing that the agreement was a lease rather than a conditional sales contract, United Rental contended that because the lease was terminable at the lessee's option, there was no contract for the sale of the property. The Court of Appeals, however, held that the agreement was in fact a conditional sales contract, notwithstanding the lessee's option to terminate. The opinion, by Judge Hammond, to which there was no dissent, went on to say:

> . . . That the agreement would be regarded as a security instrument (conditional contract of sale), required to be recorded under Code (1957), Art. 21, Sec. 66, if Maryland law controlled, is indicated by *Beckwith Machinery Co. v. Matthews*, supra [190 Md. 182, 57 A.2d 796 (1947)], and *Alban Tractor Co. v. State Tax Commission*, 219 Md. 593, 150 A.2d 456.

231 Md. at 559, 191 A.2d at 574.

Although *United Rental* was decided under Pennsylvania law, the pertinent provision in the Pennsylvania statute was the same as the provision in the Maryland statute, § 1–201(37), quoted above. This court concludes that in the absence of any Maryland case to the contrary, the dictum in *United Rental* should be followed by this court in determining the Maryland law to be applied in construing the agreement involved in the case at bar.

Public policy also favors subjecting the agreement to the provisions of the Act. Its legislative history includes the following:

> In many instances today, consumers do not know the costs of credit. Charges are often stated in confusing or misleading terms. They are complicated by "add-ons" and discounts and unfamiliar gimmicks. The consumer should not have to be an actuary or a mathematician to understand the rate of interest that is being charged.
>
> As a matter of fair play to the consumer, the cost of credit should be disclosed fully, simply, and clearly.
>
> Now that the right of consumers to be fully informed is protected when they shop in the supermarkets, the time has come to protect that right for shoppers who seek credit.

1968 U.S.Cong. & Admin.News, at p. 1965.

Under the terms of the agreement involved in this case, plaintiff will own the television set if the 78 successive weekly payments are made. Yet, without the disclosure contemplated by the Act, plaintiff faces a difficult problem in calculating the rate of interest being charged; practically, she is unable to shop for credit, and the purpose of the statute is frustrated.[3]

For the foregoing reasons, defendant's motion to dismiss the complaint is hereby denied.[*]

---

**3.** Construing a contract substantially similar to the one in the case at bar, a referee in bankruptcy held that the contract created a security interest, notwithstanding a provision entitling the so-called lessee to terminate the contract at will. Referring to the "purchase option" in the contract, the referee said:

> A provision such as this in a lease readily provides a device for financing the purchase of equipment. By crediting earlier payments of rent to the purchase price, the lessee is accorded an equity or pecuniary interest in the subject matter of the lease which he may recover at his option.
>
> It would seem therefore, that whenever it can be found that a lease agreement concerning personal property contains provisions the effect of which are to create in the lessee an equity or pecuniary interest in the leased property the parties are deemed as a matter of law to have intended the lease as security

within the meaning of Sections 9–102 and 1–201(37) of the Uniform Commercial Code. *In re Royer's Bakery, Inc.*, 1 UCC Rep.Ser. 342, 345–46 (1963).

As noted above, § 1–201(37) of the UCC, involved in that case, is in force in Maryland.

[*] The court notes that since the filing of this opinion, the parties have entered into a settlement agreement, under the terms of which defendant agreed to pay $750 to plaintiff "in order to avoid the inconvenience and expense of further litigation;" and plaintiff agreed to file a motion to dismiss the case with prejudice. The motion for dismissal noted that "defendant maintains that it violated no federal or state laws, statutes, rules or regulations and, to the contrary, contends that it has complied with all such requirements." Pursuant to that agreement, the court has dismissed the case with prejudice.

## Exhibit A

# RENTAL AGREEMENT WITH OPTION TO PURCHASE

**15819**

| | |
|---|---|
| **Best T.V. Rentals** <br> RENTAL COMPANY | DATE __11-1 r__ 19 __72__ |
| **3913 Erdman Ave.** <br> ADDRESS | RENTER __Dennis Crowe Denzil Waldren__ <br> RESIDENCE ADDRESS __2019 E. Federal St.__ JEFFERSON |
| **Balt. Md. 21213** | APARTMENT __Hse.__ PHONE __342-2730__ <br> CITY __Balt.__ CTY __2120__ STATE __Md.__ |
| **675—2378** <br> PHONE | ITEM __C/Cens__ BRAND __Ruth.__ <br> MODEL ____ SERIAL __1135 711__ |
| FOR OFFICE USE ONLY | RENTAL RATE PER WEEK IF PAID ON OR BEFORE DUE DATE, (INCLUDES STATE AND LOCAL TAXES IF APPLICABLE) <br> $ __16.00__     IN HOME COLLECTION FEE $ __5.00__ |
| | COMMENCEMENT DATE OF RENTAL TERM __Wed.__ __11 - 78__ <br> DAY OF WEEK      DATE |

### RENTAL AGREEMENT WITH OPTION TO PURCHASE

THE UNDERSIGNED, HEREIN CALLED "RENTER", WHETHER ONE OR MORE, DO JOINTLY AND SEVERALLY HEREBY RENT FROM THE RENTAL COMPANY, HEREIN CALLED "OWNER", THE ABOVE DESCRIBED PERSONAL PROPERTY, HEREIN CALLED "PROPERTY", AT THE RENTAL RATE SET FORTH ABOVE, PAYABLE WEEKLY IN ADVANCE FOR A WEEK-TO-WEEK TERM BEGINNING ON THE COMMENCEMENT DATE STATED ABOVE.

**THIS IS A WEEK-TO-WEEK RENTAL AGREEMENT WITH OPTION TO PURCHASE.**

**TITLE:** TITLE REMAINS AT ALL TIMES IN THE OWNER THE RENTER RECEIVES USE AND POSSESSION OF THE PROPERTY FOR SUCCESSIVE ONE-WEEK TERMS SO LONG AS WEEKLY RENTAL PAYMENTS ARE MADE ON OR BEFORE THE DATE DUE AND RENTER COMPLIES FULLY WITH ALL AGREEMENTS AND CONDITIONS HEREOF AND UNLESS THIS AGREEMENT IS TERMINATED AS PROVIDED HEREIN.

**TERMINATION BY RENTER:** RENTER, AT ITS OPTION, MAY AT ANY TIME TERMINATE THIS AGREEMENT BY RETURN OF THE PROPERTY TO OWNER IN ITS PRESENT CONDITION, FAIR WEAR AND TEAR EXCEPTED, AND BY PAYMENT OF ALL RENTAL PAYMENTS DUE ON OR DURING THE WEEK OF TERMINATION.

**TERMINATION BY OWNER:** THIS AGREEMENT SHALL AT THE OPTION OF THE OWNER AND WITHOUT NOTICE TERMINATE UPON THE FAILURE OF RENTER TO MAKE EVERY RENTAL PAYMENT REQUIRED HEREIN ON OR BEFORE THE DATE DUE, OR BY BREACH BY THE RENTER OF ANY AGREEMENT, CONDITION OR REPRESENTATION, ALL OF WHICH ARE AGREED TO BE MATERIAL ON TERMINATION, RENTER SHALL IMMEDIATELY RETURN THE PROPERTY TO OWNER IN ITS PRESENT CONDITION, FAIR WEAR AND TEAR EXCEPTED, AND RENTER SHALL REMAIN LIABLE FOR ALL PAYMENTS HEREUNDER TO THE DATE OF TERMINATION AND FOR THE PERFORMANCE OF ALL AGREEMENTS AND CONDITIONS HEREOF.

**LOCATION OF PROPERTY:** RENTER WARRANTS AND AGREES THAT IT WILL KEEP SAID PROPERTY IN ITS POSSESSION AT THE RESIDENCE ADDRESS ABOVE AND WILL NOT REMOVE SAID PERSONAL PROPERTY FROM SAID ADDRESS WITHOUT AGREEMENT IN WRITING EXECUTED BY THE OWNER. IF RENTER MOVES SAID PROPERTY WITHOUT SECURING PRIOR AGREEMENT IN WRITING FROM OWNER, THIS AGREEMENT SHALL BE THEREBY BREACHED, GIVING THE OWNER THE RIGHT OF IMMEDIATE POSSESSION AND RENTER SHALL BE LIABLE FOR PROSECUTION UNDER APPLICABLE STATE LAWS.

**DAMAGES:** RENTER IS FULLY RESPONSIBLE FOR THE LOSS, THEFT OR DESTRUCTION OF SAID PROPERTY FROM ALL CAUSES WHATEVER AND AGREES TO PAY TO THE OWNER THE FAIR MARKET VALUE OF THE PROPERTY IN SUCH EVENT. IN THE EVENT OF DAMAGE, AND/OR PARTIAL DESTRUCTION FROM ANY CAUSE WHATEVER, RENTER AGREES TO PAY TO THE OWNER A REASONABLE COST OF REPAIR TO SAID PROPERTY

**ASSIGNMENT:** THIS AGREEMENT MAY BE SOLD, TRANSFERRED AND ASSIGNED BY OWNER WITHOUT RESTRICTION RENTER HAS NO RIGHT TO ASSIGN, SUBLEASE, OR TRANSFER HIS RIGHTS HEREIN WITHOUT THE WRITTEN CONSENT OF OWNER.

**MAINTENANCE:** THE OWNER DOES HEREBY AGREE TO MAINTAIN THE PERSONAL PROPERTY IN GOOD WORKING ORDER AND ANY AND ALL MAINTENANCE OR REPAIRS TO THE PROPERTY OF THE OWNER RENTED HEREUNDER MUST BE PERFORMED BY THE OWNER AND THE OWNER WILL NOT BE RESPONSIBLE FOR COSTS OF ANY REPAIRS DONE AT THE REQUEST OF THE RENTER BY OTHERS.

**OWNER'S RIGHT TO ENTER AND TAKE POSSESSION:** THE OWNER AND ITS AGENTS UPON THE TERMINATION OF THIS AGREEMENT, ARE SPECIFICALLY AUTHORIZED TO ENTER UPON ANY PREMISES WHERE THE PROPERTY MAY BE FOUND AND TO TAKE POSSESSION OF AND REMOVE THE PROPERTY WITHOUT LIABILITY, AND OWNER AND ITS AGENTS ARE HEREBY RELEASED AND DISCHARGED FROM ANY CLAIM OR CAUSE OF ACTION IN OR RELATING TO ENTRY AND TAKING POSSESSION AND RENTER AGREES TO INDEMNIFY OWNER AND ITS AGENTS FOR ALL COSTS, EXPENSES, AND DAMAGES OCCURING DIRECTLY OR INDIRECTLY FROM OR RELATED TO THE TAKING POSSESSION AND THE REMOVAL OF SAID PROPERTY.

RENTER HAS NO RIGHT TO SELL, MORTGAGE, PAWN, PLEDGE, ENCUMBER, OR DISPOSE OF SAID PROPERTY OR TO MOVE SAID PROPERTY FROM THE RESIDENCE ADDRESS LISTED ABOVE: TO DO SO IS A BREACH OF THIS AGREEMENT AND RENTER SHALL BE LIABLE UNDER APPLICABLE STATE LAW:

**TIME IS OF THE ESSENCE OF THIS AGREEMENT.**

THIS RENTAL AGREEMENT MAY BE MODIFIED, VARIED, ALTERED, OR EXTENDED, OR THE AGREEMENTS ON CONDITIONS HEREOF WAIVED, ONLY BY AGREEMENT IN WRITING EXECUTED BY THE OWNER. RENTER ACKNOWLEDGES RECEIPT OF SAID PROPERTY IN SATISFACTORY OPERATING CONDITION. THIS PROPERTY IS NOT REPRESENTED TO BE NEW PROPERTY.

IN THE EVENT RENTER AT HIS SOLE ELECTION RENEWS THIS RENTAL AGREEMENT FOR __78__ SUCCESSIVE ONE-WEEK TERMS, OWNER WILL TRANSFER THE PROPERTY TO RENTER.

IN ORDER TO OBTAIN THE ABOVE DESCRIBED PROPERTY I SUBMIT THE FOLLOWING INFORMATION:

Hospital  J. Hopkins

$94. 80¢

Collected

### I HAVE READ AND UNDERSTOOD THE ABOVE AGREEMENT

Renter _____

Renter ____ _Denzil Waldron_ ____

Witness _____

**CUSTOMER COPY**