In re Mellonie RUSSELL, Debtor.

GERALD DUNCAN AUTO SALES, INC.,
Appellant and Cross–Appellee,

v.

Mellonie RUSSELL, Appellee
and Cross–Appellant.

Civ. A. No. 94–T–110–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 7, 1995.

Lawrence F. Gardella, Legal Services Corp. of Ala., Montgomery, AL, for Mellonie Russell.

Alex L. Holtsford, Jr., Floyd R. Gilliland, Jr., Nix, Holtsford & Vercelli, P.C., Montgomery, AL, for Gerald Duncan Auto Sales, Inc.

Curtis Cleveland Reding, Jr., Montgomery, AL, for Curtis Cleveland Reding, Jr.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Appellant Gerald Duncan Auto Sales, Inc. appeals a judgment by the bankruptcy court holding that it violated various consumer protection laws by failing to disclose previous

damage to an automobile it sold to appellee Mellonie Russell, and by then selling the vehicle with hidden and excessive finance charges. Duncan Auto also appeals the bankruptcy court's decision not to impose sanctions on Russell pursuant to Rule 11 of the Federal Rules of Civil Procedure. Russell has filed a cross-appeal on the grounds that the bankruptcy court did not properly calculate the damages it awarded for the excessive finance charge and that the court failed to award additional damages for unconscionable trading practices.[1] For the reasons that follow, the decision of the bankruptcy court will be affirmed in part and vacated and remanded in part.

## I. BACKGROUND

In November 1992, Russell purchased a 1984 Oldsmobile Cutlass from Duncan Auto, a used car dealership located between Wetumpka and Montgomery, Alabama. The salesperson told her that the price of the car was $3,995.00, with additional charges for tax, title, and fees, for a total sales price to $4,118.89. Russell asked if Duncan Auto would finance the car, and the dealership agreed to work out a financing arrangement in which Russell would make a sizable downpayment in return for paying the balance off on a monthly basis. The negotiated arrangement was that Russell would make a downpayment of $1,518.89, leaving a balance of $2,600.00; that she would be assessed a finance charge of $544.60, which would be added to the balance for a total payment due of $3,144,60; and that this amount would be paid at a rate of $174.70 a month for 18 months.

Duncan Auto issued several documents in connection with this transaction. These included a credit application for financing by the dealership, a bill of sale listing the terms of the sale and disclaiming all warranties except valid title, and a disclosure of damage form revealing that the car had been painted and that the engine had been replaced. The disclosure form made no reference to any

other damage to the automobile. Russell immediately fell behind on her monthly payments. One check she wrote was made on a closed checking account, and another was returned for insufficient funds.

In June 1993, Russell filed for personal bankruptcy under Chapter 13 of the Bankruptcy Code. 11 U.S.C.A. §§ 1301–1330. As part of the bankruptcy proceedings, she filed a complaint against Duncan Auto charging that the sale of the automobile violated several consumer protection statutes. Russell claimed that the dealership had violated the Alabama Deceptive Trade Practices Act, 1975 Ala.Code §§ 8–19–1 through 8–19–15, by failing to disclose damage to the automobile from a previous collision and by charging her an unconscionable price; violated the Alabama Mini–Code, §§ 5–19–1 through 5–19–31, by charging an excessive finance charge; and violated the federal Truth-in-Lending Act, 15 U.S.C.A. §§ 1601 through 1665a, by assessing a hidden finance charge.

The bankruptcy court found that Duncan Auto knowingly failed to disclose previous damage to the body and frame of the automobile in violation of the Alabama Deceptive Trade Practices Act. 1975 Ala.Code § 8–19–5(12). The court concluded, however, that, because Russell could not demonstrate the actual extent of any damages she suffered from this non-disclosure, her recovery would be limited to $100.00. § 8–19–10(a)(1). The bankruptcy court did not address Russell's unconscionability claim. § 8–19–5(23).

The bankruptcy court also found that Duncan Auto had illegally imposed hidden and excessive finance charges, and the court awarded damages under both the Truth-in-Lending Act and the Alabama Mini–Code. The Truth-in-Lending Act requires disclosure of a finance charge not made under an "open end credit plan," 15 U.S.C.A. § 1638(a)(3), and penalizes nondisclosure by awarding damages of double the total finance charge, § 1640(a)(2)(A)(i), hidden and disclosed, § 1605(a). The bankruptcy court de-

---

1. Initially, Russell also claimed that the bankruptcy court should have awarded more than $100 in nominal damages for its finding that Duncan Auto had failed to disclose previous damage to her automobile, in violation of the

Alabama Deceptive Trade Practices Act, 1975 Ala.Code §§ 8–19–1 through 8–19–15. However, Russell is no longer pursuing this issue of appeal. Russell's brief filed on March 18, 1994, at 1–2.

termined that the hidden finance charge was $732.39, the difference between the sales price of $3,995.00 and the amount Duncan Auto had spent to acquire the car and make necessary repairs, $3,262.61.[2] The court added this amount to the $544.60 finance charge Duncan Auto admitted charging Russell, for a total finance charge of $1,276.99.[3] The court then doubled this amount, as required by the Truth-in-Lending Act, for a total damage award of $2,553.98.

The bankruptcy court determined that damages were also appropriate under the Alabama Mini–Code. The Mini–Code allows for excess finance charge penalties on transactions that do not exceed $2,000.00. 1975 Ala.Code §§ 5–19–3 & 8–8–5. *Williams v. E.F. Hutton Mortg. Corp.*, 555 So.2d 158, 160 (Ala.1989); *Casey v. Travelers Ins. Co.*, 531 So.2d 846, 848 (Ala.1988); *Marshall v. Mercury Finance Co.*, 550 So.2d 1026, 1027 (Ala. Civ.App.1989). Although the principal financed by the loan totaled $2,600.00, the court reasoned that the hidden finance charge, $732.39, should be deducted to reflect an actual loan of $1,867.61, an amount which brought Russell's claim within the Mini–Code's $2,000 limit. The bankruptcy court then calculated damages under the Mini–Code. First, the court determined that the legitimate finance charge on $1,867.61 would have been $336.16. 1975 Ala.Code § 5–19–3.[4] Under the court's reasoning, the correct excess finance charge would be $940.83, the difference between the permissible finance charge, $336.16, and the $1,276.99 that the bankruptcy court determined was the actual finance charge.[5] Next, as the Mini–Code requires, the court multiplied the excess charge by ten, which, calculated correctly, would entitle Russell to damages of $9,408.30.[6] § 5–19–19.

## II. DISCUSSION

### A. Standard of Review

The applicable standard of review for findings of fact is the "clearly erroneous" standard. Rule 8013 of the Bankruptcy Rules; *Green Tree Acceptance, Inc. v. Calvert*, 907 F.2d 1069, 1071 (11th Cir.1990). Thus, the bankruptcy court's findings of fact are subject to reversal only when "the reviewing court ... is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). As to conclusions of law, the standard of review is de novo, and the district court may independently examine the applicable law and draw its own conclusions after applying the law to the facts without regard to the decision of the bankruptcy court. *In re Chase & Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir.1990). Under this standard, the court examines each of the issues on appeal.

### B. Truth-in-Lending Act and Alabama Mini–Code

Duncan Auto appeals the bankruptcy court's holdings that it imposed a hidden finance charge in violation the federal Truth-in-Lending Act and an excessive finance charge in violation of the Alabama Mini–Code. Duncan Auto argues that, by treating the difference between its investment in the car and the sales price as a hidden finance charge for purposes of calculating damages under the Truth-in-Lending Act and the Alabama Mini–Code, the bankruptcy court eliminated any possibility for profit or even recovery of costs for items such as general business overhead. Russell's cross-appeal contends that additional damages should have

---

2. Duncan Auto acquired the Oldsmobile on a trade-in and valued it at $1,995.00 and spent $1,267.61 to make repairs.

3. The bankruptcy court stated that the total finance charge was $1,276.60, and bases its subsequent calculations on this number. The correct total is $1,276.99.

4. Under § 5–19–3, the maximum finance charge for a credit sale is 10% per year for a sum between $750.00 and $2,000.00.

5. The bankruptcy court arrives at a slightly different estimate because it miscalculated the total finance charge by 39 cents.

6. Once again, the bankruptcy court arrives at slightly different estimates because of its slight miscalculation of the total finance charge.

been awarded for imposing an excessive finance charge under the Alabama Mini–Code. Under her calculations, her damages under the Alabama Mini–Code would total $25,093.50, instead of $9,408.30 as determined by the bankruptcy court.[7]

The Truth-in-Lending Act seeks to "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C.A. § 1601(a). The Act requires, among other things, that any "finance charge" on a credit transaction be disclosed to the consumer. § 1638(a)(3). The Act reflected "a transition in Congressional policy from a philosophy of 'Let they buyer beware' to one of 'Let the seller disclose.'" *Mourning v. Family Publications Serv., Inc.,* 411 U.S. 356, 377, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973). The Alabama Mini–Code also addresses the need to protect consumers and limits the total finance charge businesses can charge consumers on certain credit transactions. 1975 Ala.Code § 5–19–3.

The definition of a "finance charge" under both the Truth-in-Lending Act and the Alabama Mini–Code is similar. Under the Truth-in-Lending Act a finance charge is "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C.A. § 1605(a). Under the Alabama Mini–Code a finance charge includes "all charges payable directly or indirectly by the debtor and imposed directly or indirectly by the creditor as an incident to the extension of credit." 1975 Ala.Code § 5–19–1(1). The Truth-in-Lending Act specifically includes in this definition a "Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss." 15 U.S.C.A. § 1605(a)(5).[8]

Duncan Auto disclosed to Russell a finance charge of $544.60. At issue is whether embedded within the $3,995.00 sales price was an additional hidden finance charge and, if so, how much. Congress recognized when it passed the Truth-in-Lending Act that: "One means of circumventing the objectives of the Truth in Lending Act ... was that of 'burying' the cost of credit in the price of goods sold." *Mourning,* 411 U.S. at 366, 93 S.Ct.

---

7. Russell begins her Mini–Code argument by contending that, instead of calculating the hidden finance charge as the difference between the cost to the dealership ($3,262.61) and the sales price ($3,995.00), the hidden finance charge should be the difference between the actual value of the car as determined by the bankruptcy court ($2,000.00) and the sales price ($3,995.00). Russell then argues that the total finance charge should be determined as follows:

$3,995.00 (sale price)
– 2,000.00 (value as determined by the bankruptcy court)
$1,995.00 (hidden finance charge)
+ 544.60 (disclosed finance charge)
$2,539.60 (total finance charge)

Russell calculates the "legitimate" unpaid balance as follows:

$2,600.00 (unpaid balance)
– 1,995.00 (hidden finance charge)
$ 605.00 (legitimate unpaid balance)

Russell takes the legitimate unpaid balance and multiplies it by 15%, the legitimate finance charge rate under the Mini–Code. 1975 Ala. Code § 5–19–3(a). This amount is $90.75. However, according to Russell, because the permissible 15% finance charge is based on a one-year financing schedule and because the $174.70 monthly payments would have paid off Russell's balance plus interest in four months, or one-third of a year, the following adjustment is required: the $90.75 should be divided by 3 to yield a finance charge of $30.25. Thus, the excess finance charge, according to Russell, is:

$2,539.60 (total finance charge)
– 30.25 (permissible finance charge)
$2,509.35 (excess finance charge)

Under § 5–19–19 of the Mini–Code, a debtor is entitled to recover a penalty of either twice the finance charge or ten times the amount of the excess finance charge, whichever is greater. Because the excess charge multiplied by ten is the greater number, according to Russell, she is entitled to damages of $25,093.50.

Russell, in fact, estimated the penalty to be $35,092.50. Her calculation is wrong because she incorrectly totalled the hidden finance ($1,995.00) and the disclosed finance charge ($544.60) to be $3,539.60, rather than $2,539.60.

In addition, although Russell contends the bankruptcy court incorrectly calculated the hidden finance charge for purposes of determining her damages under the Mini–Code, she does not assert on appeal that the hidden charge was similarly miscalculated for purposes of determining damages under the Truth-in-Lending Act.

8. The Alabama Mini–Code excludes premiums permitted under the Mini–Code. § 5–19–1(1).

at 1659. "Thus in many credit transactions in which creditors claimed that no finance charge had been imposed, the creditor merely assumed the cost of extending credit as an expense of doing business, to be recouped as part of the price charged in the transaction." *Id.*[9] The statutory directive to the bankruptcy court was to determine if, in fact, Duncan Auto had "buried" a finance charge in its sales price and, if so, how much. There is no precise manner of inquiry for making this determination. In fact, a flexible test is essential because, as Congress also recognized, there are many subtle and sophisticated devices sellers might use to hide financing costs and avoid disclosure requirements. *Id.* at 366–67, 93 S.Ct. at 1659. A rigid test could be easily and quickly circumvented by innovative sellers.

The need for flexibility requires that the court look to a number of potentially relevant factors to guide its inquiry. These factors include and are not limited to: (1) real value of a product; (2) cost to the seller of the product sold; (3) amount of profit, if any, from the sale; (4) whether the seller distinguishes between cash and credit prices; and (5) the percentage of cash or credit sales. If the real value—which may constitute a commercially reasonable "range" for the product's price—is significantly less than the sales price, then the difference between the real value and the sales price may reflect a hidden finance charge. *See, e.g., Killings v. Jeff's Motors Inc.,* 490 F.2d 865, 866 (5th Cir.1974);[10] *Davis v. Colonial Securities Corp.,* 541 F.Supp. 302, 307 (E.D.Pa.1982);

*Vines v. Hodges,* 422 F.Supp. 1292, 1300 (D.D.C.1976); *Stewart v. Credithrift of America Consumer Discount Co. (In re Stewart),* 93 B.R. 878, 883–85 (Bankr. E.D.Pa.1988); *Lawson v. Reeves,* 537 So.2d 15, 17 (Ala.1988).[11] However, if the difference does not allow the seller to recover its cost (including its investment in the product and its general business overhead) and a reasonable profit, then the additional factors of cost and profit may be appropriate for consideration. Whether the seller does or does not draw a distinction between cash and credit sales may also be relevant, but a cash sales price might be meaningless if the vast majority of the seller's business is credit sales. *See, e.g., Yazzie v. Reynolds,* 623 F.2d 638 (10th Cir.), *cert. denied,* 449 U.S. 982, 101 S.Ct. 398, 66 L.Ed.2d 244 (1980); *Berryhill v. Rich Plan of Pensacola,* 578 F.2d 1092, 1099 (5th Cir.1978). The court must examine these factors, other factors, or a combination thereof, in light of the particulars of the seller's business and the credit transaction at issue, in order to arrive at a determination of what portion, if any, of a sales price was a hidden finance charge.

The bankruptcy court, without explanation, concluded that the entire difference between the sales price and the amount Duncan Auto had invested in the automobile was a hidden finance charge. The bankruptcy court failed to explain why it discounted Duncan Auto's alleged need to recover general overhead costs, not to mention to earn a reasonable

---

**9.** The Court explained:
"For example, two merchants might buy watches at wholesale for $20 which normally sell at retail for $40. Both might sell immediately to a consumer who agreed to pay $1 per week for 52 weeks. In one case, the merchant might claim that the price of the watch was $40 and that the remaining $12 constituted a charge for extending credit to the consumer. From the consumer's point of view, the credit charge represents the cost which he must pay for the privilege of deferring payment of the debt he has incurred. From the creditor's point of view, much simplified, the charge may represent the return which he might have earned had he been able to invest the proceeds from the sale of the watch from the date of the sale until the date of payment. The second merchant might claim that the price of the watch was $52 and that the credit was free. The second merchant, like the first, has forgone the profits which he might have achieved by investing the sale proceeds from the day of the sale on. The second merchant might be said to have 'buried' this cost in the price of the item sold."

*Mourning,* 411 U.S. at 366 n. 26, 93 S.Ct. at 1659 n. 26.

**10.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to September 30, 1981.

**11.** *See supra* note 9.

profit.[12] Without an explanation, this court cannot determine whether the bankruptcy court's findings as to the presence and amount of hidden and excessive finance charges are supported by the evidence. The holdings of the bankruptcy court that Duncan Auto charged hidden and excessive finance charges in violation of the Truth-in-Lending Act and the Mini–Code will be vacated and this case remanded for reconsideration of these holdings in light of comments of this court. On remand, the bankruptcy court should address all factors that may be relevant in determining if, in fact, Duncan Auto had buried a finance charge in its sales price and, if so, how much.[13]

### C. Deceptive Trade Practices Act

Duncan Auto contends that the bankruptcy court erred in holding that it had violated the Deceptive Trade Practices Act.[14] The dealership contends, first, that it was not provided adequate notice of Russell's claim against it, as is required by state law, 1975 Ala.Code § 8–19–10(e). This contention is not properly before the court. This issue was not raised during the bankruptcy court proceedings. As a general rule of appellate review, the reviewing court does not consider issues not presented to the trial court. *McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1495 (11th Cir.1990) (en banc). The reviewing court, however, under its own discretion may review a pure question of law even if it was not raised below if a refusal to consider it would result in a miscarriage of justice. *Id.* This standard has not been met here.

■ Duncan Auto also contends that the bankruptcy court's finding that the car was damaged and unfit for use is clearly erroneous. The Act provides, in part, that it is an unlawful trade practice to "knowingly fail[ ] to identify . . . accidentally damaged goods as damaged goods if they are damaged to the point of decreasing their value or rendering the goods unfit for the ordinary purpose for which they were purchased." § 8–19–5(12). Willie M. Dawson, who has done body work on cars for over 15 years and now has his own body work shop,[15] testified that the car had been in a wreck and straightened out but not repaired properly and, as a result, was unsafe to drive and of substantially less value than would be expected.[16] Based on this testimony, the bankruptcy court found that the automobile sold to Russell "was unfit for the ordinary purpose for which it was purchased, that is, it was unsafe to be driven." [17] This finding is not clearly erroneous, and the decision of the bankruptcy court will be affirmed to this extent.

■ Duncan Auto further contends that the bankruptcy court's finding that the dealership was aware of the previous damage to the automobile sold to Russell is clearly erroneous. The Deceptive Trade Practices Act does not require "actual knowledge." The knowledge requirement is met by "Either actual awareness or such awareness as a reasonable person should have considering all the surrounding circumstances." § 8–19–3(4). Dawson testified that the damage he observed would be visible to someone as experienced with cars as a used car dealer,[18] and, based on this testimony, the bankruptcy court found that "Here a dealer with 38 years experience would surely be able to see body and frame damage as testified to by

---

**12.** Moreover, under Russell's method for calculating damages under Mini–Code, Duncan Auto could not even recover its actual investment in the automobile. Of course, this observation is based on the assumption that the dealership's statement of its actual investment is credible. *See infra* note 13.

**13.** Duncan Auto said that it acquired the automobile on a trade-in and valued it at $1,995.00. *See supra* note 2. If the bankruptcy court has doubts about the veracity or reasonableness of this value, it should say so explicitly.

**14.** As noted earlier, Russell does not challenge the bankruptcy court's refusal to assess greater

damages on her claim that Duncan Auto failed to disclose previous damage to her automobile in violation of the Deceptive Trade Practices Act.

**15.** Transcript of trial held on September 20, 1993, at 8.

**16.** *Id.* at 10–13, 27.

**17.** Opinion entered on November 23, 1993, at 2.

**18.** Transcript of trial held on September 20, 1993, at 12, 27–28.

Dawson." [19] This finding is not clearly erroneous, and the decision of the bankruptcy court will be affirmed to this extent.

 Russell contends in her cross-appeal that the bankruptcy court failed to consider her claim that the sales price was unconscionable under the Alabama Deceptive Trade Practices Act. The Act provides that it is an unlawful trade practice to "Engag[e] in any other unconscionable ... act or practice in the conduct of trade or commerce." § 8–19–5(23). The bankruptcy court did not explain why it failed to address this claim.

Duncan Auto responds that, in any event, there is no legal basis for Russell's unconscionability claim. First, the dealership contends that it is impossible to ascertain the fair market value of a used automobile. Duncan Auto argues that there is no reliable basis for assessing the price of a used automobile, in light of all the factors that might enter into a determination, and that, as a result, there is no way to determine whether a price is unconscionable. The court cannot agree. For example, there are objective measurements, such as "book listings" for used automobiles, which can be adjusted depending on the condition of the vehicle to arrive at an objectively reasonable price.

 Duncan Auto further responds that, under Alabama law, unconscionability is available only as a defense to enforcement of a contract and not as an independent basis of a claim. To the contrary, however, the Deceptive Trade Practices Act specifically makes an unconscionable action or practice a basis for a claim. As stated, the Act makes it is an unlawful trade practice to "Engag[e] in any other unconscionable ... act or practice in the conduct of trade or commerce." § 8–19–5(23). The Act then provides that "Any person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer ... shall be liable to each consumer." § 8–19–10(a). Alabama courts have identified a variety of factors to be assessed in determining whether a contract or contractual provision is unconscionable: "In addition to finding that one party was

unsophisticated and/or uneducated, a court should ask (1) whether there was an absence of meaningful choice on one party's part; (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract." *Layne v. Garner,* 612 So.2d 404, 408 (Ala.1992); *see also Jackson v. The CIT Group/Sales Financing, Inc.,* 630 So.2d 368, 373 (Ala.1993); *Strickland v. Kafko Mfg., Inc.,* 512 So.2d 714, 718 (Ala.1987). Russell contends that Duncan Auto violated the Act by charging her $3,995.00 for a automobile that was damaged and unsafe to drive and had actual value of only $2,000.00. On remand, the bankruptcy court should consider Russell's unconscionability claim under the Deceptive Trade Practices Act.

### D. Rule 11 Sanctions

The court concludes that the bankruptcy court's decision not to grant sanctions under Rule 11 of the Federal Rules of Civil Procedure against Russell was not in error. The court's decision is affirmed on this issue.

### III. CONCLUSION

An appropriate judgment will be entered affirming the decision of the bankruptcy court holding that Duncan Auto failed to disclose prior damage to the automobile it sold to Russell and declining to impose Rule 11 sanctions. In all other respects, the decision will be vacated and remanded for further proceedings not inconsistent with this memorandum opinion.

### JUDGMENT

In accordance with the memorandum opinion entered today, it is the ORDER, JUDGMENT, AND DECREE of the court that the decision of the bankruptcy court, entered on November 23, 1993, is affirmed in part and vacated and remanded in part for further proceedings not inconsistent with the memorandum opinion entered this date.

19. Opinion entered on November 23, 1993, at 2.

624

It is further ORDERED that each party is to bear its own costs.