**Christopher RINGENBACK**

v.

**CRABTREE CADILLAC–
OLDSMOBILE, INC.**

**No. CIV. 3:98CV606(RNC).**

United States District Court,
D. Connecticut.

March 30, 2000.

Bernard Kennedy, Michael Kennedy, New Haven, CT, for Plaintiff.

Ian Angus Cole, Cohen & Thomas, Derby, CT, for Defendant.

CHATIGNY, District Judge.

After review and absent objection, the recommended ruling is hereby approved and adopted.

So ordered.

### RECOMMENDED RULING ON MOTIONS FOR SUMMARY JUDGMENT

MARTINEZ, United States Magistrate Judge.

Pending before this court are the plaintiff's Motion for Summary Judgment (doc. # 37) and the defendant's cross Motion for Summary Judgment (doc. # 40). I recommend that the defendant's motion (doc. # 40) be GRANTED in part, DENIED in part and that the plaintiff's motion (doc. # 37) be DENIED for the reasons that follow.

### I. PROCEDURAL HISTORY

The plaintiff brings this action against the defendant, Crabtree Cadillac–Oldsmobile, Inc., in three counts. In count one, he alleges that the defendant violated the Truth in Lending Act, 15 U.S.C. §§ 1601 et seq., and the Connecticut Truth in Lending Act, Conn. Gen.Stat. § 36a–676, (collectively "TILA"), because the defendant charged a hidden finance charge and failed to accurately account for a lien fee. The plaintiff alleges, in a conclusory manner, a number of other violations as well. The theory of his case, however, appears only to be that the defendant charged a hidden finance charge and failed to disclose a lien fee.

In his second count, the plaintiff alleges a violation of the Motor Vehicle Information and Cost Saving Act (the "Odometer Act"), 49 U.S.C. § 32701 et seq., and the Connecticut Odometer Tampering Law, 14 Conn. Gen.Stat. § 106b, because the defendant inaccurately disclosed the odometer reading.

In the third count, the plaintiff alleges that the defendant violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 41–110a et seq.

On March 3, 1999, the plaintiff moved for summary judgment as to counts one and two. (Doc. # 37). On March 23, 1999, the defendant filed a cross motion for summary judgment. (Doc. # 40).

### II. FACTS

On February 15, 1998, the plaintiff purchased from the defendant a used car, a 1996 Oldsmobile Achieva. (Doc. # 38 ¶ 1; Doc. # 39, Ex. A). On the day the transaction was consummated, several documents were created. These included a Retail Installment Contract and Security Agreement ("financing agreement"), at

least one purchase order[1] and an odometer statement. (Doc. # 39, Ex. A, B, C, D). As necessary and appropriate, further facts will be set forth below.

## III. DISCUSSION

### A. Standard of Review

A party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Summary judgment is not appropriate where, based on the evidence a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment bears the burden of showing the absence of any genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### B. TILA

The plaintiff contends that the defendant violated TILA in two ways. First, he argues that the defendant charged him an unlawful hidden finance charge. Second, he claims that the defendant inaccurately disclosed certain fees to him. Each claim will be addressed in turn.

#### 1. Hidden Finance Charges

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a); *see also Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283, 285 (7th

Cir.1997). TILA is a remedial statute and must be interpreted in favor of the consumer. *Frazee v. Seaview Toyota Pontiac, Inc.*, 695 F.Supp. 1406 (D.Conn.1988).

The Connecticut Truth in Lending Act, Conn. Gen.Stat. § 36a–676 *et seq.*, mirrors the language used in the federal act. *See* Conn. Gen.Stat. § 36a–677.

TILA requires creditors to disclose clearly and accurately to consumers any finance charge that the consumer will bear under the credit transaction. *See* 15 U.S.C. § 1638(a)(3). The regulations implementing TILA, known as "Regulation Z," provide that

[t]he finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 226.4(a).

TILA's "stringent disclosure requirements are designed to prevent creditors from circumventing TILA's objectives by burying the cost of credit in the price of the goods sold." *Walker v. Wallace Auto Sales, Inc.*, 155 F.3d 927, 930 (7th Cir. 1998). If a merchant charges customers using credit a higher cash price than it charges customers paying with cash, that extra charge must be disclosed as a finance charge. *See Gibson v. Bob Watson Chevrolet–Geo, Inc.*, 112 F.3d 283 at 287.

In *Mourning v. Family Publications Serv., Inc.*, 411 U.S. 356, 366 n. 26, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973), the Supreme Court gave an example of a transaction involving an unlawful hidden finance charge. It explained that

two merchants might buy watches at wholesale for $20 which normally sell at retail for $40. Both might sell immedi-

---

**1.** The plaintiff appends to his submission two different purchase orders, each of which is dated February 15, 1998. He maintains that one of them (doc. # 39, Ex. C) contains a forgery of his signature.

ately to a consumer who agreed to pay $1 per week for 52 weeks. In one case, the merchant might claim that the price of the watch was $40 and the remaining $12 constituted a charge for extending credit to the consumer. From the consumer's point of view, the credit charge represents the cost which he must pay for the privilege of deferring payment of the debt he has incurred. From the creditor's point of view, much simplified, the charge may represent the return he might have earned had he been able to invest the proceeds from the sale of the watch from the date of the sale until the date of payment. The second merchant might claim that the price of the watch was $52 and that credit was free. The second merchant, like the first, has foregone the profits which he might have achieved by investing the sale proceeds from the day of the sale on. The second merchant may be said to have "buried" this cost in the price of the item sold. By whatever name, the $12 differential between the total payments and the price at which the merchandise could have been acquired is the cost of deferring payment.

*Id.*

The plaintiff in this case appears to argue, albeit inartfully, that the defendant "buried" at least part of the cost of credit and charged him a "hidden finance charge." He believes that the defendant car dealership in this case acted in the same way as the latter of the retailers discussed above by the Supreme Court. In short, his theory of recovery is that the price of the car should have been $12,100.00 (the N.A.D.A. value) but he paid substantially because he bought the car on credit. The plaintiff explains that he was a poor credit risk; the defendant falsely stated on the paperwork that the plaintiff made a $4,000.00 down payment only so that he would be extended credit. Instead of giving him the benefit of the $4,000.00 down payment, however, the defendant inflated the price of the car by an equivalent

amount. If he is correct, then the defendant unlawfully charged him more for the car than a cash paying customer would have paid and the difference is an undisclosed finance charge.

The following undisputed facts pertain to this claim. The N.A.D.A. Official Used Car Guide ("book value") states that the retail value of a 1996 Achieva is $12,100.00. (Doc. # 39, Ex. N). The record shows that the plaintiff paid $15,734.22, a substantially higher price for the car. The financing agreement discloses the finance charge as $6,488.38 and the amount financed as $13,219.22. The agreement states that the net trade-in for the plaintiff's 1983 Oldsmobile was $4,000.00 and that the plaintiff made a down payment in that amount. The purchase orders executed the same day also state that the plaintiff was given a $4,000.00 credit in the form of a down payment for his trade-in. (Doc. # 39, Ex. B, C). Another document, however, indicates that the plaintiff's 1983 Oldsmobile had an actual cash value of only $1.00. (Doc. # 39, Ex. X). The plaintiff testified at his deposition that the car had only salvage value because it had in excess of 175,000 miles on the odometer. (Doc. # 49).

According to the plaintiff's theory, he was charged more than the value of the Achieva. He submits that because the "book value" of the Achieva was $12,100.00, the purchase order should have stated the cash price as $12,100.00 minus the $4,000.00 down payment, plus $1,200.00 for the extended service contract, plus a conveyance fee of $249.00 and 6% sales tax of $572.94. Instead, the plaintiff submits, he was not given the benefit of the $4,000.00 trade-in allowance; if the plaintiff had been given the full trade-in allowance that the defendant disclosed, the amount financed would have been only $9,157.94, rather than the $13,219.22 that was disclosed. The plaintiff argues that the difference in the sums is the hidden finance charge.

The defendant argues that in this particular case, the undisputed facts reveal not that it charged a hidden finance charge, but that the plaintiff made a bad bargain, i.e., paid more for the automobile than it was worth. In support of its argument that such a transaction is not violative of TILA, the defendant cites *Frazee v. Seaview Toyota Pontiac, Inc.,* 695 F.Supp. at 1408. In *Frazee,* the plaintiff argued that there was a discrepancy between the fair market value of the car she purchased and the amount paid because the car had a long history of malfunctions and defects. She claimed that the difference was an unlawful hidden finance charge. The court rejected her claim, reasoning that the plaintiff's claim was in effect a claim sounding not in TILA but rather in warranty. The court held that "[a]ny differential between the fair value of the car and its cash price is attributable to a bad bargain, or perhaps a violation of the bargain in the sale of the car, and not any hidden finance charges." *Id.* at 1408.

■ *Frazee* is inapposite to the case at bar. Comparable circumstances are not present here; the plaintiff does not claim that the 1996 Achieva is worth less than what he paid because it was in need of repairs. Unlike *Frazee,* there are disputed issues of fact in this case concerning the value of the 1996 Achieva, the value of the plaintiff's trade in and whether he was given the benefit of what the defendant disclosed as a $4,000.00 down payment.

In order to determine whether the defendant charged the plaintiff a hidden finance charge, the court must examine several factors.

There is no precise manner of inquiry for making this determination. In fact, a flexible test is essential because, as Congress also recognized, there are many subtle and sophisticated devices sellers might use to hide financing costs and hide disclosure requirements. ... The need for flexibility requires that the court look to a number of potentially relevant factors to guide its inquiry.

These factors include and are not limited to: (1) the real value of the product; (2) cost to the seller of the product sold; (3) amount of profit, if any, from the sale; (4) whether the seller distinguishes between cash and credit prices; and (5) the percentage of cash or credit sales. *In re Russell,* 181 B.R. 616, 621 (M.D.Ala. 1995). All of these factors should be considered. *Id.* at 622. "If the real value—which may constitute a commercially reasonable 'range' for the product's price—is significantly less than the sales price, then the difference between the real value and the sales price may reflect a hidden finance charge." *Id.*

The court is unable to discern from the current record whether the transaction violates TILA. First, the only evidence concerning the true market value of the 1996 Oldsmobile before the court is the N.A.D.A. figure. This is not an adequate substitute for proof of the true market value of the car. *See Vines v. Hodges,* 422 F.Supp. 1292, 1300 (D.D.C.1976); *cf. Killings v. Jeff's Motors, Inc.,* 490 F.2d 865, 866 (5th Cir.1974) (parties stipulated to the highest figure customarily charged for cars of the type at issue). Moreover, the record is entirely devoid of evidence relevant to the other pertinent factors. Therefore, summary judgment on this issue is not proper.

## 2. Lien Fees

The plaintiff also claims that the undisputed facts show that the defendant violated TILA because it did not accurately disclose certain fees to him. The following undisputed facts relate to this issue.

On the financing agreement, the defendant disclosed a $36.00 fee under the category "Title and Registration Fee to Government Agency." Under the category "Lien Fee" the notation "N/A" was made. (Doc. # 39, Ex. A). On the purchase orders, the defendant disclosed the same $36.00 fee. The purchase orders provided an additional detail—they state that $11.00

was for registration and $25.00 was for the title. (Doc. #39, Ex. B, C). The defendant filed an application for registration with the State of Connecticut which indicates that the registration fee was $70.00, the safety plate was $5.00, the title fee was $25.00 and the lien fee was $10, for a total of $110. (Doc. #39; Ex. L). The defendant paid the Department of Motor Vehicles the sum of $110.00 for these fees. (Doc. #39, Ex. I).

The plaintiff argues that the defendant violated TILA because the defendant "did not disclose the lien fee on the retail installment contract, the two purchase orders or the invoice or any other document.... Therefore, the difference between $110.00 and $36.00 o[r] $74.00 was the sum that was not disclosed in the finance charge." (Doc. #29, p. 23.) The defendant admits that it did not disclose the entire fee, but asserts that its failure is attributable to a clerical error. The defendant explains that although the fees were not properly disclosed, the plaintiff was not charged the full amount $110.00, but was only charged the $36.00 that was disclosed.

■ A lender's failure to disclose a fee does not violate TILA where the fee was not charged to or paid by the borrower. *See Ballew v. Associates Financial Services Co. of Nebraska,* 450 F.Supp. 253, 263 (D.Neb.1976); *see also Jennings v. Edwards,* 454 F.Supp. 770, 778 (M.D.N.C. 1978) ("[i]f a charge is not paid directly or indirectly by the customer, but is paid solely by the creditor and is absorbed the creditor as a cost of doing business, that charge is not a finance charge which must

2. Even if the plaintiff had properly raised this issue, his argument regarding the service contract is completely lacking in merit. On the finance agreement, under the category "amount paid to others," the defendant disclosed that it "may be retaining a portion of this amount." Doc. #39, Ex. A. The Official Staff Commentary to Regulation A states that a creditor

may reflect that [it] has retained a portion of the amount paid to others. For example, the creditor could add to the category

be disclosed.") The record in this case is clear that the defendant absorbed the difference between what was disclosed and what it paid to the State of Connecticut. There is no evidence that the defendant included the difference as a part of the finance charge. Therefore, the undersigned recommends that summary judgment enter in the defendant's favor on this issue.

### 3. *Other Claims*

■ For the first time in its reply brief, the plaintiff argues that the defendant violated TILA because it failed to disclose that it was keeping $519.00 of the $1,200.00 service contract as its commission.

The defendant contends that the court should not consider these arguments because they were raised for the first time in the plaintiff's reply brief. *See Playboy Enterprises, Inc. v. Dumas,* 960 F.Supp. 710, 720 n. 7 (S.D.N.Y.1997) (citing cases). The court agrees and declines to address these claims.[2]

### C. *The Odometer Acts*

The transferor of an automobile must disclose to the transferee the accurate mileage set forth on the odometer or, if the transferor knows that the odometer reading is not accurate, disclose that the actual mileage is unknown. *See* 49 U.S.C. § 32705(a)(1). The Act provides for a civil penalty against "any person who, with intent to defraud, violates any requirement imposed under this subchapter...." 49 U.S.C. § 32710(a).[3]

"amount paid to others" language such as "(we may be retaining a portion of this amount.)"
Official Staff Commentary § 226.18(c)(1)(iii)–2 (published at 61 Fed.Reg. 14956 (April 4, 1996)).

3. The Connecticut Odometer Tampering Law provides that it is illegal to "remove, turn back, or change the reading on the odometer of any motor vehicle...." Conn. Gen.Stat. § 14–106b(b). The plaintiff never directly discusses the Connecticut statute in either his

In order to prevail on a civil claim brought under the Odometer Act, a plaintiff must establish

> two essential elements: (1) a violation of the Act's odometer disclosure requirements (i.e., the providing of an inaccurate odometer reading), and (2) an intent to defraud.

*Diersen v. Chicago Car Exchange*, 110 F.3d 481, 487 (7th Cir.1997). The parties in this case do not dispute the existence of the first element; there is no question that the odometer disclosure was inaccurate. The parties disagree, however, as to the second element—each argues that the undisputed facts support an inference in their favor.

The record reveals that when the defendant purchased the 1996 Achieva from Enterprise Leasing Company on August 4, 1997, the odometer disclosure stated that the odometer read 24,661. (Doc. # 42, Ex. A).

At the time the defendant sold the car to the plaintiff on February 15, 1998, the defendant provided the plaintiff with an odometer statement which stated the odometer reading on the Achieva was 47,702 miles. (Doc. # 39, Ex. D). The stock number of the Achieva was 4470. (Doc. # 42, ¶ 42). The defendant submits that this number was erroneously transcribed into the odometer box. At the time of the sale, the defendant also gave the plaintiff a "Used Car Buyers" statement which stated the mileage as 24,751. (Doc. # 43, ¶ 5).

The parties disagree as to the correct mileage on the Achieva; the defendant maintains that the car had 24,751 miles at the time of the sale. (Doc. # 43, ¶ 3). The plaintiff denies that this is an accurate figure. (Doc. # 46, ¶ 2).

Several work orders contain varying odometer readings—a work order dated August 18, 1997 (6 months before the plaintiff bought the car) indicates that the

mileage was 44,701; a work order dated August 22, 1997 indicates that the mileage was 44,700; a work order dated November 21, 1997 indicates that the mileage was 44,702; and a work order dated February 28, 1998 (less than 2 weeks after the plaintiff bought the car) indicates that the mileage was 24,884. (Doc. # 39, Ex. E, F, G, K).

The work orders and repair invoices also reveal that the Achieva was leaking coolant and that the headgasket was damaged. In addition, the brakes were worn and required replacement. (Doc. # 39, Ex. T, U).

On the application for registration with the State of Connecticut, the defendant wrote that the odometer read 47,702. Before it filed the application, however, someone crossed out that figure and wrote, by hand, the number 24,751 as the mileage. (Doc. # 39, Ex. L).

The plaintiff argues that summary judgment should enter in his favor because the undisputed facts show that the defendant acted with gross negligence and/or recklessness when it inaccurately disclosed the odometer reading. *See Ryan v. Edwards*, 592 F.2d 756, 762 (4th Cir.1979); *Aldridge v. Billips*, 656 F.Supp. 975, 979 (W.D.Va. 1987) ("Mere reliance on the odometer reading, in the face of other readily ascertainable information from the title and the condition of the [vehicle] constitutes a reckless disregard that rises to the level of intent to defraud. . . .") The plaintiff claims that several facts support his claim that the defendant was grossly negligent and/or reckless with regard to the accuracy of the odometer reading and its obligations under the Odometer Act. He claims that the second purchase order, upon which the incorrect mileage was crossed out and another number handwritten, contains a forgery of his signature. He also maintains that the defendant never supplied him with a corrected odometer statement. In addition,

Memorandum in Support of Partial Summary Judgment (Doc. # 39) or in his Plaintiff's Reply to Defendant's Objection to Plaintiff's Motion for Summary Judgment and Objection to Cross-motion (Doc. # 45).

the plaintiff asserts, the defendant gave him a blank odometer statement for his trade-in, the 1983 Oldsmobile, and asked him to sign it; the defendant's intent to defraud can be inferred because it falsely wrote that the trade-in had only 0 miles. He further argues that the varying odometer readings as indicated on the work orders show that the defendant failed on more than one occasion to check the odometer for an accurate reading. Moreover, the plaintiff claims that the defendant knew or should have known that the car had more miles on it than the odometer revealed because it failed emissions three times and its engine was in poor condition. He asserts that the car required several repairs which were clear indications that the car had in excess of 24,751 miles. Finally, he disputes the defendant's assertion that the actual mileage at the time of the sale was 24,751.

The defendant, on the other hand, argues that summary judgment should enter in its favor because the undisputed facts show that the discrepancy is not the result of an intent to defraud, but rather is attributable to a clerical error. The defendant submits that the case of *Kelso v. Lincoln First Bank*, 117 A.D.2d 982, 499 N.Y.S.2d 530 (N.Y.A.D. 4th Dept.1986) is dispositive of this claim. In that case, the plaintiff bought a used car with an odometer reading of 17,748 miles. A short time after purchasing the car, the plaintiff brought it into the dealership for repairs; at that time, he saw a computer printout which stated that the mileage was 27,274. The plaintiff filed suit against the dealership, alleging a violation of the Odometer Act. The trial court inferred that the defendant altered the records in light of the discrepancy alone. On appeal, the court reversed, holding that the circumstances lead to a strong inference that the differences in the records of the odometer readings were the result of a clerical error in recording the mileage on the computer. When facts seeking to establish the existence of wrongdoing are equally consistent with an inference that an impropriety has not occurred, plaintiffs have failed to carry their burden of proof and liability cannot attach. We additionally observe that the court's finding that defendant altered the odometer "with intent to defraud" as required by the statute ... was based totally on conjecture and is unsupported in the record.

*Id.* at 532.

■ *Kelso* is distinguishable from the present case. In that case the only evidence concerning intent to defraud that the plaintiff offered was evidence that the odometer disclosure was inaccurate. In this case, however, the plaintiff offers additional facts in support of its claim. It is entirely possible that a trier of fact would find that the discrepancy was nothing more than an innocent clerical error and that the defendant lacked an intent to defraud. There are other facts, however, from which a trier of fact could infer an intent to defraud. Therefore, the entry of summary judgment is inappropriate.

## IV. CONCLUSION

For all the above reasons, the court recommends that the defendant's Motion for Summary Judgment (doc. # 40) be GRANTED in part as to the Lien Fee claim in the first count and be DENIED as to the remainder. The court recommends that the plaintiff's Motion for Summary Judgment (doc. # 37) be DENIED.

Either Party may seek the district judge's review of this recommendation. *See* 28 U.S.C. 636(b) (**written objections to ruling must be filed within ten days after service of same**); F.R. Civ. P. 6(a) & 72: Rule 2 of the Local Rules for United States Magistrates Judges, United States District Court for the District of Connecticut; *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.1992) (**failure to file timely objections to Magistrate Judge's recommended ruling**

waives any further judicial review of the ruling.)